JAMES VAN INWAGEN

*v.*

THE CITY OF CHICAGO.

1.  INSURANCE—*of the taxation of foreign companies in Chicago.*   The 5th section of the act of February 13, 1863, entitled "An act to reduce the charter of the city of Chicago and the several acts amendatory thereof into one act, and to revise the same," which provides that insurance companies not incorporated under the laws of this State, and doing business in said city, shall pay into the city treasury two per cent of the premiums on all insurance effected in said city, is repealed by section 30 of the act of March 10, 1869, entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies."

2.  And the repealing act took from the city the right to sue for such per cent due on premiums by virtue of the former act, prior to and at the time of the repealing statute, as the repealing act contained no clause saving such right, and the same was not a vested right.

3.  When a statute gives a right in its nature not vested but remaining executory, if it does not become executed before a repeal of the law giving the right, it falls with the law and it can not thereafter be enforced.

APPEAL from the Superior Court of Chicago ; the Hon. WILLIAM A. PORTER, Judge, presiding.

Messrs. HIGGINS, SWETT & QUIGG, for the appellant.

Mr. M. F. TULEY, for the appellee.

32    VAN INWAGEN *v.* CITY OF CHICAGO.    [Sept. T.,

Opinion of the Court.

Mr. JUSTICE BREESE· delivered the opinion of the Court:

This was an action of debt, brought to the Superior Court of Chicago, by the city of Chicago, against James Van Inwagen, to recover of him two per centum on the premiums paid to him as agent of the Astor Insurance Company of New York.

The plea was *nil debit.* The issue was tried by the court, who found for the plaintiff the amount claimed, namely: two hundred and thirty-seven dollars and eight cents, and rendered judgment accordingly, to reverse which defendant appeals and assigns the general errors.

The amount recovered was for the two per cent on premiums received from the first day of January, 1868, to the first day of January, 1869. The action was brought to the March term, 1870, under the act entitled "An act to reduce the charter of the city of Chicago and the several acts amendatory thereof into one act, and to revise the same," approved February 13, 1863.

Section 5 of that act provides as follows: "All corporations, companies or associations not incorporated under the laws of this State, engaged in said city in effecting fire, marine or life insurance, shall pay to the city treasurer the sum of two dollars upon the hundred dollars, and at that rate upon the amount of all premiums which, during the half year ending on the first day of July and January, shall have been received or have agreed to have been paid for any insurance effected or agreed to be effected in said city by or with such corporations, companies or associations respectively."

The defense was, that this section was repealed by section 30 of "An act to incorporate and to govern fire, marine and inland navigation insurance companies," approved March 10, 1869. Section 30 is as follows: "Every agent of any insurance company incorporated by the authority of any other State or government, shall return to the proper officer of the

county, town or municipality in which the agency is established, in the month of May annually, the amount of the net receipts of such agency, which shall be entered on the tax lists of the county, town and municipality, and ·subject to the same rate of taxation for all purposes, State, county, town and municipal, that other personal property is subject to at the place where located—said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided*, that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax or license fee not exceeding two per cent, in accordance with the provisions of their respective charters, said gross receipts to be applied exclusively to the fire department of such city." Session Laws 1869, p. 209.

It is claimed by appellant that this section is inconsistent with the fifth section of the act of 1863, above recited, in these respects: 1. That the moneys to be collected under the act of 1869 are to be applied to a different purpose from the moneys collected under the act of 1863. 2. The provision as to the returns are different, the act of 1863 requiring them to be made on the first of July and January of each year, while that of 1869 requires them to be made annually on the first of May. 3. That the act of 1863 requires a return of the gross premiums, whilst that of 1869 requires a return of net premiums only.

As to the first respect, we can not see wherein is the difference, as neither section appropriates the money to be collected. In the other respects there are the differences pointed out, and render the provisions of the act of 1869 inconsistent with those on which the action was brought, and being so, the provisions of that act are repealed by the terms of the thirtieth section.

The question then arises, which has been discussed at great length, what is the effect of the repeal on causes of action existing before and at the time of the repealing statute?

3—61ST ILL.

34          VAN INWAGEN v. CITY OF CHICAGO.    [Sept. T.,

Opinion of the Court.

We believe the rule is well settled that, as to inchoate rights—rights not carried into judgment, and so not executed, can not be, and are not, saved, in the absence of a saving clause in the repealing statute. The doctrine is, that inchoate rights, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute, and unless those rights have become so far perfected as to stand independent of the statute: *Butler* v. *Palmer*, 1 Hill, 324; that is to say, executed.

A strong case in point on this doctrine is found in Miller's case, 1 Wm. Blackstone, 451. Under the insolvent debtor's act, 1 George 3d, one Miller was compelled by a creditor, at the sessions at Guildhall, to give up his effects, and he accordingly signed and swore to his schedule, but from circumstances arising, the court adjourned his discharge until the next sessions. In the meantime the statute 2d George 3d passed, which repealed the compelling clause. A motion was made in the King's Bench for a *mandamus* to the justices now to proceed and grant Miller his discharge, the jurisdiction having attached before the clause was repealed. But the court said, nothing is more clear than that the jurisdiction is now gone, and that we can not grant any such *mandamus*. Even offenses committed against the clause while in force could not have been now punished without a special clause to allow it, and therefore a clause is inserted in the repealing statute for that purpose.

The effect of a repealing statute is to obliterate the prior law as completely from the records as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded while it was an existing law. *Ray* v. *Goodwin*, 4 Moore & Payne, 341; Dwarris on Statutes, 676.

The clear result of all the authorities is, when a statute, as in this case, gives a right in its nature not vested, but remaining executory, if it does not become executed before a repeal

of the law giving the right, it falls with the law, and it can not thereafter be enforced.

It is unnecessary to argue the proposition, that this right to sue for the percentage was not such a right as in legal parlance is termed vested.

It is said, by the attorney for the city, that an organized fire department was, at the time of suit brought, in existence in the city of Chicago, and when the premiums were paid. This may be so, and doubtless is so, but as the record furnishes no evidence of the fact, we can not, judicially, take notice of it.

Should such proof be made, the case might be brought within the saving of the proviso of section thirty.

The judgment, for the reasons given, is reversed, and the cause remanded for a new trial.

*Judgment reversed.*